[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a Memorandum of Decision in a contested dissolution of marriage action. This court, after hearing testimony, reviewing the evidence and considering the claims of law and fact, finds as follows: CT Page 737
The plaintiff, husband, and the defendant, wife, were intermarried in Greenwich, Connecticut on June 9, 1990. This was the first marriage for both parties. The plaintiff and the defendant both have resided in the State of Connecticut for more than one year next before the date of the complaint. The parties have no minor children issue of their marriage. Neither party has received any governmental assistance during this marriage. The parties separated in November 1996. The evidence discloses that the marriage of the parties has broken down irretrievably.
The plaintiff filed a complaint dated September 17, 1996. Service was made on the defendant in the State of Connecticut on September 18, 1996. The defendant filed an answer and cross complaint on November 1, 1996 re-alleging the allegations of the plaintiff's complaint and requesting certain statutory orders. This court is proceeding on the defendant's amended cross complaint dated January 12, 1998.
The plaintiff husband is 36 years of age in good health. This is his first marriage. He is a self-employed landscaper, doing business as "Your Gardening Angel." He graduated from Port Chester, New York high school. He has had no other formal education. He self-taught himself the landscaping business during the few years he worked for a Rye, New York landscaping company. During his on the job landscaping training he had no supervisory duties. During and after high school he also worked part-time for the owner of a large estate in Greenwich. He parked cars at a local establishment in the winter months. After a few years, the owner of the Greenwich estate hired him full time. He lived on the estate property performing landscaping and odd jobs.
The landscaping business, "Your Gardening Angel", has grown substantially since it was formed. He now hires 25 employees. His 1998 tax return discloses ownership of ten vehicles. A number of issues concerning this business arose at trial; 1) The current fair market value of the business; 2) The efforts made by the defendant in the formation and growth of the business and the value of those efforts; and 3) The current earnings of the plaintiff. These issues will be discussed in later sections of this opinion.
At the time of the marriage in 1990 the plaintiff was working full time in the established business "Your Gardening Angel," and working part time at the Greenwich estate. He owned four CT Page 738 vehicles, a business computer, some landscaping equipment and had a small business checking account. He had no debts. He resided at the Greenwich estate.
The defendant is 42 years of age. This is her first marriage. She was raised in Greenwich having attended a local private school and Greenwich High School. She eventually graduated from The American School in Paris. She completed a number of years at Colby Sawyer College in New Hampshire without receiving a degree. She has obtained proficiency in a number of office computer programs and has basic accounting skills. She worked full time for Control Data Corporation as a secretary in the Accounting Department from 1979 until the late 1980's. Her last salary was $21,000.00. She then worked for a temporary agency at corporations in the Greenwich/Stamford area. She became a full time employee at National Reinsurance Company, one of her temporary assignments, and worked for them in a secretarial/administrative capacity for four years. She had no supervisory or managerial responsibilities. Her last salary at National Reinsurance was between $30,000 and $31,000. She testified that she left because her husband wanted her to help him in running the landscaping business. The plaintiff has denied the claims.
In February 1995, she obtained her current position in an insurance office working 15 hours a week 9 a.m. to 2 p. m., 3 days a week. She now gets paid $14,000 gross and $11,800 net annually after federal withholding, social security, state tax and medicare tax. Her current duties: secretarial/administrative, collecting rent for 48 units dealing with tenant problems, arranging for repairs, paying bills, maintaining three separate accounts, establishing computer records, payroll, tax payments, tax forms and dealing with IRS and Department of Revenue Services.
At the time of her marriage the defendant was living with her parents. She owned an automobile, a small bank account and was employed full time at Control Data with corporate benefits.
The party's family home, a single family house located at 22 Dundee Road, Stamford, Connecticut, is the defendant's residence. The plaintiff listed a market value of $370,000 as shown in the plaintiff's financial affidavit. The defendant claims a $360,000 value. In prior financial affidavits a $310,000 value is shown and this appears to be based on a September 23, 1996 real estate CT Page 739 appraisal attached to a Notice of Experts in the file. There was no expert testimony as to the house value. Other than the facts contained in the financial affidavits, no other evidence of value was offered. The court finds that this jointly owned house has a current market value of $370,000 subject to a $230,000 first mortgage. Since the party's separation the plaintiff has lived in a cottage at the Greenwich estate. Each owns an automobile with substantial loan balances. There are miscellaneous other assets not exceeding $10,000 in total value.
The major asset is the landscaping business known as "Your Gardening Angel". The defendant seeks a lump sum payment in cash representing a 30% interest in the business. This request is set forth in the defendant's post hearing memorandum. This is based on the following claims made by the defendant: she assisted the plaintiff in starting the business in the early 1980's when they first dated, worked for many years in the business at no pay and was the brains behind the business being started in the first place, her efforts increased the income and value of the business. The plaintiff disputes these claims and argues that her work consisted of part time bookkeeping. He solicited all the business. It was his idea to establish the business. He hired and fired the men. He claims he is a hard worker and the business has grown through his efforts alone.
The plaintiff claims that she is entitled to permanent alimony because her health deteriorated during the marriage. The plaintiff disputes that claim and in support thereof points to her current earnings as well as the trial testimony of her treating physician. From their 1990 marriage until their 1996 separation he notes that she was on medication for depression and overweight but otherwise was in good health. He claimed that she is now able to work full time.
This court finds the following as to her health: This action was returnable to the Superior Court at Stamford on October 15, 1996. Until that time the defendant, although obese, was in good health. She is currently suffering from pulmonary fibrosis. She first noted symptoms during the late summer of 1997. She was admitted for a week to Greenwich Hospital for those symptoms and improved slightly. She was admitted to Stamford Hospital on December 30, 1997 and treated by Dr. Paul Sachs, its Associate Director of the Pulmonary Medicine. Pulmonary fibrosis is a scarring of lung tissue. Medical science does not know its cause. CT Page 740
After a surgical procedure in which her chest was opened at the Stamford Hospital, the diagnosis of ideopathic pulmonary fibrosis was then made. She remained in the hospital for almost a month and was critically ill. She had respiratory failure. After being discharged from Stamford Hospital, she attended the rehabilitation center of St. Joseph's Hospital for physical therapy and endurance training. She has been on medication for this condition for the past two years. Her medication regimen has caused side effects; depressed immune system, hair loss, infections, high sugar diabetes count, and a general increase in weight. When she stops taking the medication, she has an onset of muscle fatigue.
Doctor Sachs currently continues to treat her. She needs to use oxygen on an infrequent basis for physical activities. Her tests have improved. The latest oxygen reading is slightly below average for her age. After walking for a minute the oxygen reading lowers. In Dr. Sachs' opinion, "the defendant is not cured and the statistics are against her." In a statistical analysis, 30% of the patients suffering from ideopathic pulmonary fibrosis respond to therapy and only 5% are ultimately cured. In Dr. Sach's opinion the defendant is within that 30%. Neither attorney asked Dr. Sachs any questions as to how this condition would affect her future earning capacity.
Prior to the onset of the pulmonary condition the defendant was obese. She had taken medication for depression and was treated by a psychologist for a number of years. Her obese condition does not make it easy to furnish therapy for pulmonary fibrosis. Exercise would result in weight loss but it is difficult to go to the gym using an oxygen tank. She has responded to daily water exercises and low level aerobics, but her weight increased 50 pounds from April 1998. Dr. Sachs has referred her to an interest for treatment of obesity and depression. Her medication was refilled in July of 1999 at 5 milligrams per day. Her highest dosage was 60 milligrams per day Dr. Sach's goal is to get her off the medication. He is guarded as to that prognosis. It was noted in the hospital records that the defendant smokes 5-6 cigarettes a day and has been doing so for 24 years. The defendant is requesting permanent alimony based on her health and her limited earnings. The defendant's post trial brief summarized the defendant's arguments citing a number of Connecticut cases. The court has read all the cases and has done research in this area as the trial judge in Wainwright v. Wainwright, Superior Court J.D. at Stamford/Norwalk docket number FA 96-0149591S Page 741 * (February 5, 1997, Tierney, J.) 1997 Ct. Sup. 1162. The 30 year old Mrs. Wainwright suffered from chronic fatigue syndrome, (CFS) a controversial diagnosis. An expert in CFS testified as to her poor prognosis and inability to work. She had been unemployed during most of the marriage. She was receiving disability insurance income. Her status was constantly monitored by the disability insurance company. The CFS condition arose during the three year marriage. The court ordered permanent alimony. This court found "that there is no reasonable prognosis that the wife will be capable of being employed at any time in the near future." Factually Wainwright does not support the defendant's claim to permanent alimony. Watson v. Watson, 20 Conn. App. 551,556 (1990).
The court notes that the defendant attended every court session. The last few were full day. The defendant was able to testify, take extensive notes and assist her counsel. The majority of her testimony was without an oxygen supply on the witness stand. For three consecutive trial days she used no oxygen at any time during the trial sessions.
The first financial affidavit filed by the plaintiff was July 3, 1997, which disclosed that his gross weekly income from his principal employment was $1,450; $75,400 per year. His weekly deductions on that financial affidavit were $76 for taxes, $39 for social security and no withholding for medicare and state income tax. The latest financial affidavit filed by the plaintiff is August 11, 1999 which discloses that his gross weekly income from the same landscaping business, "Your Gardening Angel," is $2,697; $140,244 per year. He had deductions for social security, Connecticut taxes and federal income taxes totaling $882 per week. In between those two financial affidavits were multiple financial affidavits filed by the plaintiff, each showing an increase in earnings. The amount of his earnings and the accuracy of his financial affidavit's were issues constantly raised by the defendant's attorney.
The IRS had doubts as to the accuracy of the plaintiffs filings. They conducted a lengthy audit of his tax returns for 1995, 1996 and 1997. The audit was conducted in the midst of this trial. As a result of this audit, the trial was placed in abeyance until the completion of the audit. There was some dispute between the parties as to the results of this audit but it appears that the net effect of this trial, the filing of successive financial affidavits and an I.R.S. audit has caused CT Page 742 the plaintiff to disclose more accurate information as to his gross and net earnings. Billington v. Billington, 220 Conn. 212,219-220 (1991).
This court does not believe that it can rely solely on the plaintiff's current financial affidavit. A series of exhibits were offered including the plaintiffs income tax returns from 1985 through and including 1998. In 1985 and 1986 a W-2 was issued to the plaintiff from other employers. In those two years he was earning Schedule C income from "Your Gardening Angel". In 1986 the amount of W-2 annual income had decreased to $4,833 and the gross income from his business had increased to $45,791. Thereafter, all the plaintiff's income was from the landscaping business and shown in his Schedule C. His Schedule C gross earnings has increased substantially from 1986. In 1990, the year of the marriage, his gross earnings were $250,317 and the defendant's W-2 earnings were $27,022. In 1996, the year of the filing of this lawsuit, his Schedule C income was $672,254 gross. In 1997 it was $818,620 and in 1998 it was $963,423. His highest earnings have occurred post separation.
The plaintiff has occupied rent free, a cottage on the Greenwich estate, since the parties separation in August 1996. The defendant claims that the fair market value of this cottage should be considered as additional income. There was no evidence of the fair rental value of the cottage. An employee of the plaintiff works on the estate. (Exhibit 52) The plaintiff pays his salary and benefits. In addition, the plaintiff himself performs unbilled services on the estate. The court has calculated the wages for the employee's work at the Greenwich estate. The cottage has one bedroom. The court concludes that the plaintiff is paying a fair market rent in the form of services and no imputed income should be added for a rent free residence.Shearn v. Shearn, 50 Conn. App. 225 (1998).
In addition, the IRS audit has prompted the plaintiff to put his business records on a Quicken computer program. The majority of his customers are large Greenwich estates. This court assumes that virtually all of this business income is paid by check and is shown on his tax returns and the Quicken reports. Except for some payments by Martin King in travelers checks, there was no evidence to the contrary. A Quicken print-out was offered as an exhibit. The court finds that a few items paid by the business can be categorized as personal expenses: the plaintiffs personal transportation, health insurance premiums, personal tax payments CT Page 743 and some miscellaneous expenses.
The plaintiff's 1998 income as shown on his tax return was $141,000. The court has examined the personal expenses paid by his business in 1998, which continued into a part of 1999. (Exhibit 22). The court finds that $160,000 is a fair and reasonable amount for the plaintiff's current annual income.
No expert testified as to the value of the business. The plaintiff is its only executive. He has one foreman. The business is not incorporated or otherwise registered to anyone else. All the equipment is registered in the plaintiff's name. Each day he meets with the men, assigns tasks and locations and supervises the various jobs. A bookkeeper keeps the ledger sheets, issues paychecks and records tax information. The plaintiff alone solicits business, generally using records of high end real estate purchases. He makes a personal solicitation of the new owners using his current customers as references. He has a personal relationship with all 60 of his customers all of whom he alone solicited. He takes pride in the business, uses a logo and sees to it that all of his men are neat, shaved and uniformly dressed. The court finds that "Your Gardening Angel" is a personal service business. Its value is based essentially on the plaintiff's continued involvement. In the event that the business were sold the loyalty of the customers would be to the plaintiff personally. "The company is a `one man' business and that without the defendant's knowledge, local contacts and management skills, it was not likely that the business would continue." Turgeon v.Turgeon, 190 Conn. 269, 274 (1983).
The plaintiff states that his business is worth $180,000. The defendant claims that the business is worth $400,000. This court has little basis on which it can make a determination of the fair market value of the business. No appraisals were offered. No justification of the business values placed by each party in their financial affidavits was offered. As a result of the IRS audit the business owes $153,000 plus interest and penalties. Neither affidavit indicated whether the business debts had been taken into account in determining business value. The business provides the plaintiffs sole source of income. The plaintiff's various financial affidavits shows business values between $150,000 and $180,000. He filed real estate loan applications in which a line for "value of business" contained figures of $264,000 and $277,000. Exhibit 16 shows that the $277,000 business value was arrived at by "capitalizing at a 5 year rate, CT Page 744 the average income of the business less a pro forma manager's compensation over the last 2 1/2 years." No other evidence or testimony was offered on this exhibit or on the assumptions underlying these calculations. The court finds that there was no substantiation of business values. The defendant, as the non-owner, puts the value of the business at $300,000 — $400,000 in her various financial affidavit. This is based on the above $264,000 — $277,000 values having increased in relation to the increase in the gross income. No other substantiation of the defendant's value was offered. In her post trial memorandum the defendant is requesting an award in cash equivalent of 30% of the value of the business. She does not want to own a portion of the business. The court cannot determine the asset value of the business. Turgeon v. Turgeon, supra, 190 Conn. 274. The court can only treat the business as a source of an income stream under the facts provided. Leo v. Leo, 197 Conn. 1, 9 (1985).
The parties dispute the amount, importance and value of services rendered by the defendant in the formation, managing and growth of the business. The court concludes that the following efforts of the defendant have increased the value of the business: In 1983, before the marriage, she initially cosigned a loan to purchase his first truck, since he was young and had no established credit. The plaintiff did pay off the truck loan. In 1985, she helped with the business paperwork receiving no pay. During this time the parties were residing together. She helped modify the business logo and distributed flyers to mailboxes. In 1986, a bookkeeper was hired and was paid an hourly basis. The bookkeeper did the work previously done by defendant at no pay. No social security payments were made by the business for the benefit of the defendant. In 1988, the defendant replaced that bookkeeper. She formatted the bills. The plaintiff would handwrite the bills, and the defendant would type them and send them out. She prepared and helped distribute promotional flyers. The parties met frequently to discuss and review bills. She sent out billing reminders. She worked in the business 2 to 3 hours per week prior to the marriage. After the marriage until mid 1997 the defendant worked in the business about 4 hours a week and another 6 hours at the end of each month. A tax accountant prepared the tax returns. She dealt with the accountant and gave him the data for the returns. She dealt with an attorney concerning legal problems regarding the business. She handled worker's compensation issues. She prepared a company procedural manual and had it translated into Spanish. She proposed using a flyer for business solicitation, she copied it and mailed the CT Page 745 flyers. She assisted in designing the "Your Gardening Angel" logo which is currently being used. She attended to business receipts, opened the bills, prepared checks, attached receipts, ordered supplies, filed documents, balanced the check book, made bank deposits and withdrawals, made business postings, made the deposits for the quarterly tax withholdings, calculated payroll and arranged for the payroll to be paid on a cash basis. She managed the accounts receivables and accounts payables. When the plaintiff was hospitalized with pneumonia in 1987 she spent more time helping in the business during the plaintiff's recovery. She dealt with various insurance agencies and assisted the plaintiff in shopping for better insurance policies. She purchased gifts for customers at Christmas and other occasions. She assisted in establishing and adjusted pricing of services and landscaping materials sold. In addition she kept house for the parties doing the shopping, laundry, cooking and cleaning.
There was no written agreement as to the operation or ownership of the business. The only tax returns disclosing any business income is the plaintiff's Schedule C. No Schedule C was filed by the defendant for the business. All motor vehicles used in the business were registered in the plaintiff's name. There was no proof of any money invested in the business by the defendant before the marriage. There was no evidence of any equipment or business trade name registered or filed in the defendant's name. There was no testimony that she bought, repaired, maintained or was familiar with any of the landscaping equipment. There was no proof that the defendant cosigned any business loans except for the purchase of the first truck in 1983. A payroll service prepared the filings for social security and unemployment and an accountant prepared the W-2, 1099 and other tax forms. No documents were produced showing defendant had an ownership interest in the business. No witness, other that the defendant, testified that she is or was the owner. She never met with customers. She did not solicit customers except for distributing flyers. She did not set the employees job duties or schedules. The defendant produced no other witness that she was held out to the public, customers, or employees as a part owner of the business. The plaintiff alone hired and fired his employees.
The burden of proof to establish a partnership is on the party making the allegations. The burden to prove a partnership is more strict when relatives are the alleged partners. Paollela v.Paollela, 42 Conn Supp. 184, 186 (1991). The court finds that the landscaping business is a sole proprietorship owned by the CT Page 746 plaintiff.
Even if the defendant proved an ownership interest in "Your Gardening Angel", the court at dissolution has the discretion to order that said interest be bought out by a cash payment. Millerv. Miller, 22 Conn. App. 310, 313 (1990). Even assuming the defendant's value of the business of $400,000, is correct the net value after the IRS debt is less than $250,000. At the defendants 30% claim, the maximum claim in cash equivalent for her claimed interest in the business is $75,000. A payment of seven years for such a business interest has been approved in addition to an award of periodic alimony. Siracusa v. Siracusa,30 Conn. App. 560, 561-3, 565 (1993).
The court has considered the hours that the defendant testified that she worked in the business and applied an hourly rate consistent with the defendant's then rate of compensation. The court after comparing the hours put into the business by the parties, finds that on an average basis the plaintiff put in over 90% of the combined hours. The court feels that, as a fair and reasonable method of determining the monies, the defendant should be awarded for her contributions to the plaintiff's business, the plaintiff should pay to the defendant a lump sum amount of money, not as alimony or taxable wages, in order to compensate the defendant for her efforts in starting, continuing and growing, the plaintiff's sole proprietorship landscaping business, "Your Gardening Angel".
The plaintiff is current in the pendente lite payments; originally as of a November 25, 1996 later modified and clarified: a) The first mortgage of 22 Dundee Road, Stamford, CT in the amount of $2,591 per month; b) $100 per week alimony; c) $400 per month prescription reimbursement (current except possibly for Exhibit 41 bills); d) payment of health insurance of approximately $500 per month for both parties and; e) fuel oil and electric costs for 22 Dundee Road, Stamford, CT. averaging $280 per month. These total $3,954 per month. Hotchkiss v.Hotchkiss, 143 Conn. 443, 447 (1956), Fitzgerald v. Fitzgerald,169 Conn. 147, 153 (1975). The two motions for contempt dated April 23, 1999 and July 7, 1999 are denied. A motion to modify alimony was filed in December 1997 to be heard at the time of trial has been was rendered moot during trial. All discovery issues were resolved during trial.
The court has considered the provisions of Connecticut General CT Page 747 Statutes § 46b-62, § 46b-81, and § 46b-82 and O'Neill v.O'Neill,13 Conn. App. 300 (1988) as well as the evidence, testimony, claims of law, and claims of fact made by the parties in rendering the following orders:
1. A decree dissolving the marriage will enter on the grounds of irretrievable breakdown to enter June 12, 2000.
2. The defendant is entitled to the exclusive possession of the family home at 22 Dundee Road, Stamford, Connecticut without the obligation to pay rent or use and occupancy.
3. The marital home at 22 Dundee Road, Stamford, Connecticut will be placed on the market and sold immediately. The court will retain continuing jurisdiction over the terms and conditions of the sale of the premises, including but not limited to, real estate broker listing, times of showing, sale price, and payment of expenses of the property until the sale. Upon the closing, after the payment of normal closing costs, attorney fees, recording fees, conveyance taxes, real estate brokerage commissions, if any, and the principal and unpaid interest on the first mortgage as well as the real estate taxes and other expenses, the proceeds shall be divided equally between the parties. Each party shall pay one half of all costs of maintaining the marital home including but not limited to first mortgage principal and interest, real estate taxes, insurance, repairs, capital improvements and utilities.
4. Each party will be responsible for paying one half of any capital gains tax that may accrue by reason of said marital home division, each party being permitted the benefits of the current tax law.
5. All right, title and interest in and to the real property at 14 Perry Street, Stamford, Connecticut or any contractual rights thereto, is awarded to the plaintiff free and clear of any claims of the defendant.
6. All right, title and interest in and to the real property at 33 West Washington Avenue, Stamford, Connecticut is awarded to the plaintiff free and clear of any claims by the defendant. This court finds that said real property is owned in beneficial ownership by an employee of the plaintiff. The plaintiff merely co-signed and paid a portion of the down payment to assist this CT Page 748 valuable employee in purchasing the property. That employee holds equitable title to the real property, occupies the property and is currently paying all the obligations for the property, including mortgage payments. The court finds that employee is the actual owner of 33 West Washington Avenue, Stamford, CT.
7. The plaintiff is to pay the defendant as periodic alimony the sum of $36,000 per year, payable $3,000 monthly on the first day of each month commencing on January 1, 2000 until the defendant's death, the plaintiff's death, the defendant's remarriage, or January 1, 2005 whichever event sooner occurs. The court find that the termination of this alimony on January 1, 2005 is consistent with the testimony of Dr. Paul Sachs and the ability of the defendant to regain full time employment.Ippolitto v. Ippolitto, 240 Conn. 683, 685 (1993). A contingent wage execution is ordered.
8. The court will retain continuing jurisdiction concerning the startup adjustments of said periodic alimony payments because the pendente lite orders terminate effective upon the entry of this decree.
9. The defendant shall own the following property as her sole property free and clear of any claim by the plaintiff:
a. Employment benefits with her current part time employer;
b. 1996 Nissan automobile;
c. First Union joint checking account; (non business)
d. First Union joint checking account;
e. Cornerstone Bank checking account;
f. All right, title and interest in and to any loans from Mrs. Kingston;
g. First Union joint savings account;
h. All right, title and interest in the zero coupon bonds as shown in her financial affidavits;
i. One half of any U.S.T. stock, if any. CT Page 749
10. The plaintiff shall own the following property as his sole property, free and clear of any claims by the defendant:
a. All right, title and interest in and to the business known as "Your Gardening Angel" including all accounts receivables, contracts, vehicles, inventory, and other assets;
b. First Union Bank business checking account;
c. Personal checking account at First Union Bank;
d. 1998 Nissan Pathfinder automobile;
e. Fleet Bank account with revolving credit;
f. One half of any U.S.T. stock, if any;
g. Loans due plaintiff by reason of 33 West Washington Avenue, Stamford, CT transaction;
h. Any contractual rights to purchase real property;
i. Premium money market account;
j. SEP plan.
11. The plaintiff shall pay to the defendant the sum of $48,000.00 as property settlement payable in the following manner: Principal of $1,000 per month with the first payment due March 1, 2000, together with interest on the unpaid balance at the rate of 8% per annum payable monthly. $48,000.00 shall be paid at the principal rate of $1,000.00 per month until said $48,000.00 is paid in full or sooner upon the sale of the property at 22 Dundee Street, Stamford, Connecticut when said $48,000.00 together with an unpaid interest shall be paid in full. This is not periodic alimony. These payments are not modifiable. The first payment due on March 1, 2000 shall include interest from the date of this decision to February 29, 1999. A mutually agreeable amortization schedule will govern the amount of the monthly payments commencing April 1, 2000. The court will retain continuing jurisdiction over the orders in this paragraph.
12. The plaintiff will pay for and hold the defendant harmless from any and all claims penalties, liabilities and assessments due by reason of any joint, federal, or state income tax return CT Page 750 jointly filed by the parties and all business tax returns and/or Schedules filed or to be filed by plaintiff as well as any amounts due by reason of the recent IRS audit. Each party shall cooperate in any audits or proceedings necessary concerning those tax returns and shall produce all documents, signatures and information that is necessary to put into effect this court order. Any refunds shall become the plaintiff's property. The plaintiff is obligated to pay all sums due by reason of the recent IRS audit and any penalties and interest due therefrom.
13. Each party will hold the other harmless from any and all debts, claims and liabilities listed in his or her respective financial affidavit. The defendant will pay any indebtedness due her parents. The plaintiff will pay the balance of the original $10,000 Hausman loan and the indebtedness due Kraus Whiting LLP.
14. The plaintiff shall pay the current mortgage, interest, real estate taxes and insurance on the property at 22 Dundee Street, Stamford, CT, until the closing. These payments are not periodic alimony. The principal reduction in the first mortgage, refund from the unused insurance premiums and real state tax adjustments at closing shall be paid as a closing cost to the plaintiff prior to the equal division of the net proceeds. The plaintiff shall be entitled to receive any income tax deductions and/or credits at closing for those payments.
15. Court finds that a substantial amount of attorney's fees had to be expended to determine the plaintiff's earnings. The plaintiff will therefore pay to the defendant the sum of $45,000 as counsel fees, together with 8% interest from the sale of this decision. The attorney fees and interest will be due and payable on the sale of the property at 22 Dundee Street, Stamford, Connecticut or at any other date or dates established by this court upon proper application. The defendant has insufficient liquid assets, even as a result of this court's orders, with which to pay attorney fees. The payment by the defendant of attorney fees would substantially undermine this court's financial orders. In addition to this order of attorney fees the plaintiff is to pay the defendant the sum of $500 towards the court appearance of Dr. Paul Sachs, said payment to be made 90 days from the date hereof without interest.
16. The plaintiff shall cooperate with defendant's efforts to maximize her health insurance coverage under COBRA/OBRA or the conversion of the private health insurance, issued by National CT Page 751 Association for the Self Employed, policy number PFL 7730564272, whichever is appropriate. The defendant shall pay all premiums therefore.
17. Each party will sign any documents that are necessary to put into full force and effect the orders of this court.
18. The court will retain continuing jurisdiction concerning the division of all personal property located in the marital home at 22 Dundee Street, Stamford, Connecticut including items already removed from the marital home by the plaintiff. The division of said personal property is referred for mediation. No other court orders will enter at this time.
19. The defendants maiden name of Kimberly Kingston is returned to her.
20. In the event the plaintiff has not made all pendente lite payments to and on behalf of the defendant, the plaintiff shall do so up until the date of this order. The pendente lite orders shall not survive this decree but any arrears in said pendente lite orders shall survive this decree.
21. The plaintiff's attorney will prepare the judgment file for submission, approval, and signature by the defendant's attorney.
22. All orders are effective today except order number 1 which shall be effective June 12, 2000.
BY THE COURT
KEVIN TIERNEY, J.